**No. 15-16932**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| Kimberly Jackson,<br><br>Appellant/Appellant,<br><br><br>-vs-<br><br>Wells Fargo Bank, N.A. et al,<br><br>Appellees/Appellees. | No. 15-16932<br><br><br><br>UNITED STATES DISTRICT COURT<br>DISTRICT OF ARIZONA (PHOENIX)<br>CV-13-00617-PHX-SPL |

**ON APPEAL FROM THE JUDGMENT OF**
**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

_____

**APPELLANT'S OPENING BRIEF**

_____

David R. Vandeventer
State Bar # 30321
7272 East Indian School Suite 111
Scottsdale, AZ 85251
drv@tmrc.org
Attorney for Appellant

# I.   TABLE OF CONTENTS

I.     TABLE OF CONTENTS…………………………………………………II

II.    TABLE OF AUTHORITIES…………………………………………… III

III.   STATEMENT OF JURISDICTION ..............................................................1

A.     DISTRICT COURT JURISDICTION ..................................................................1

B.     COURT OF APPEALS JURISDICTION .............................................................1

C.     TIMELINESS OF APPEAL AND FINAL ORDER ................................................1

IV.    THE ISSUES PRESENTED FOR REVIEW ARE: ..........................................2

1.     Did the Trial Court Err in dismissing counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and 15 from the First Amended Complaint?

2.     Did the Trial Court Err in Denying Summary Judgment for Appellant?

3.     Did the Trial Court Err in Sua Sponte granting Summary Judgment for the Appellee?

V.     STATEMENT OF THE CASE ....................................................................3

VI.    SUMMARY OF ARGUMENT ...................................................................10

VII.   ARGUMENT ........................................................................................11

VIII.  CONCLUSION ......................................................................................39

IX.    STATEMENT OF RELATED CASES .......................................................39

X.     CERTIFICATE OF COMPLIANCE ..........................................................40

XI.    CERTIFICATE OF FILING AND SERVICE ..............................................41

## II. TABLE OF AUTHORITIES

*Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2014) (en banc)………………………..37

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). ……………………….24,25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………………11

*Brant v. Hargrove*, 129 Ariz. 475, 632 P.2d 978 (App. 1981)……………………12

*Buckingham v. United States,* 998 F.2d 735 (9th Cir. 1993)……………………...37

*Carey v. Population Services Intrntnl,* 431 U.S. 687 (1977)……………………..17

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). …………………………………..24

*Cool Fuel, Inc. v. Connett,* 685 F.2d 309 (9th Cir. 1982)………………………..37

*Corvello v. Wells Fargo Bank, NA,* 728 F.3d 878 (9th Cir. 2013). . . . . . . . . . .32,36

*Craig v. Boren,* 429 U.S. 190 (1976)……………………………………………16

*Dunlap v. Jimmy GMC.,* 136, Ariz. 338, 666 P. 2d 83 (App. 1983)…………. 15,19

*Eardley v. Greenberg,* 164 Ariz. 261, 792 P.2d 724 (1990)……………………...12

*Eisenstadt v. Baird,* 405 U.S. 438 (1972)………………………………………17

*Frazier v. Southwest Sav. & Loan Ass'n,* 134 Ariz. 12, 653 P2d 362 (1982)……..23

*Gorman v. Pima Cnty.*, 230 Ariz. 506, 287 P.3d 800 (Ct. App. 2012)……………34

*Gospel Missions of Am. v. City of L.A.,* 328 F.3d 548 (9th Cir. 2003)……………37

*In re Krohn v. Sweetheart Properties,* 203 Ariz. 205, 52 P3d 774 (2002)………..21

*In re Oracle Corp. Securities Litigation,* 627 F.3d 376 (9th Cir. 2010)…………..25

*In State ex rel. Romley v. Gaines*, 67 P.3d 734, 205 Ariz. 138 (Ct. App. 2003)….35

*Kassman v. Busfield Enters., Inc.,* 131 Ariz. 163, 636 P2d 353 (App 1981) …….22

*Madsen v .Western American Mortgage Co.* 143 Ariz. 624, 694 P.2d 1228 (App. 1985)………………………………………………………………………………18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)…..25

*McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 829 P.2d 1253 (Ct. App. 1992)……………………………………………………..22,31

*Mid Kansas Fed. S&L v. Dynamic Development Corp.* 167 Ariz. 122, 804 P2d 1310 (1991)……………………………………………………………………..21

*Narramore v. HSBC Bank USA, N.A.,* No. 09-CV-635-TUC-CKJ, 2010 WL 2732815 (D. Ariz. July 7, 2010)……………………………………………….33

*Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966)……………………..29

*Nozzi v. Housing Authority of City of Los Angeles*, No.13-56223 (9th Cir. 2015) 36

*Portsmouth Square v. Shareholders Protective Com,* 770 F.2d 866(9th Cir.1985)37

Restatement (Second) of Contracts § 90 (1981)…………………………………..35

Restatement (Second) of Agency Section 213. …………………………………..22

Restatement (Second) of Torts Section 552 …………………………………..26,27

Restatement (Second) of Torts Section 323……………………………………….12

Restatement (Second) of Torts Section 551 …….………………………………..23

*Robertson v. Sixpence Inns of Am.*, 163 Ariz. 539, 789 P2d 1040(1990)………...23

*Roswell v. Volkswagen of America*, 147 Ariz. 160, 709 P2d 160 (1985)…………15

*Schrock v. Fed. Nat'l Mortg. Ass'n,* No. CV 11-0567-PHX-JAT, (D. Ariz. 2011).22

*St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 742 P.2d 808 (1987)……………………………………………………………………...26,31

*Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)……………………...12

*Singleton v. Wulff,* 428 U.S. 106 (1976)…………………………………………..16

*Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012)…12

*Steinberger v. McVey, No.* 1 CA-SA 12-0087 (Ariz. Ct. App. 2014) ……………12

*Stewart v. Phoenix Bank,* 49 Ariz. 34, 64 P. 2d 101 (1934)………………………23

*Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 493 P.2d 1220 (Ariz. App. 1972)……...34

*Torres v. City of Madera,* 648 F.3d 1119 (9th Cir.2011)…………………………24

*Trollope v. Koerner,* 106 Ariz. 10, 470 P.2d 91 (1970)…………………………. 34

*U.S. Department of Labor v. Triplett,* 494 U.S. 715(1990)………………………16

*Virginia v. American Booksellers Association,* 484 U.S. 383 (1988)……………..17

*Ward v. Fireman's Fund Insurance Co.,*152 Ariz. 211, 731 P.2d 106 (App. 1985).18

*Wells Fargo Bank v. Arizona Laborers,* 38 P.3d 12, 201 Ariz. 474 (2002)……….17

*Wigod v. Wells Fargo Bank N.A.,* 673 F3d 547 (7th Cir 2012)……………………33

**Statutes**

A.R.S. §33-801…………………………………………………………........12

A.R.S. §33-807.01………………………………………………………… 12,13.20

A.R.S. §33-820 …………………………………………………………......13

28 U.S.C. §1332……………………………………………………………1

28 U.S.C. § 1367……………………………………………………………...1

**Rules**

Fed. R. Civ. P. 8(a)(2)……………………………………………………11

Fed.R.Civ.P. 56(a). . . .. . . . . . . . . . . . . . . . . . .. . . . . . . . . . . …….19

Fed. R. App. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .1

Fed. R. App. 25(d)(1)-(3) ………………………………………………41

Fed. R. App. 31(b) ………………………………………………………41

Ninth Circuit Rule 13-1, 32-1………………………………………………40

# III. STATEMENT OF JURISDICTION

## A. District Court Jurisdiction

The District Court of Arizona had jurisdiction pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1367.

## B. Court of Appeals Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294 as Appellant is appealing the Order of the United States District Court of Arizona entered by Judge Steven Logan, dated August 31, 2015, [Docs. 72 pages 4-30, Excerpts of Record][1] and the Order dated October 18, 2013. [Doc. 27, pages 174-182, Excerpts of Record].

## C. Timeliness of Appeal and Final Order

The Order dismissing Ms. Jackson's claims was filed on October 18, 2013 [Doc. 27, pages 174-182, Excerpts of Record] and the Order denying Appellant's Motion for Partial Summary Judgment and sua sponte granting summary judgment for the Appellees was filed on August 31, 2015. [Doc. 72/73, pages 3-30, Excerpts

---

[1] The Consent Judgment was included with the Amended Complaint and cited to but is a government document with exhibits and attachments. Appellant can make this document available upon request.

of Record]. The appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A). The appeal is from a final order or judgment that disposes of all parties' claims.

## IV. STATEMENT OF ISSUES PRESENTED FOR REVIEW

### A. Reviewability and Standard of Review

As to some of the issues raised on appeal, the claims were raised as a dismissal under Rule 12(b)(1) and ruled on in the Order dated October 18, 2013. [Doc. 27, pages 174-182, Excerpts of Record]. The applicable standard of review relating to the District Court for failure to state a claim is de novo. *Geographic Expeditions, Inc. v. Estate of Lhotka,* 599 F.3d 1102, 1107 (9th Cir. 2010); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).

As to the other issues, they deal with the denial of the Motion for Partial Summary Judgment [Doc. 61, pages124-131, Excerpts of Record] and the sua sponte Order granting summary judgment to Appellee in the Order dated August 31, 2015. [Doc. 72, pages 4-30, Excerpts of Record].

### B. Issues Presented for Review

1.     Did the Trial Court Err in dismissing counts 4, 5, 6, 8, 9, 10, 11, 12, 13, and15 from the First Amended Complaint?

2.     Did the Trial Court Err in Denying Summary Judgment for Appellant?

3.     Did the Trial Court Err in Sua Sponte granting Summary Judgment for the Appellee?

# V.    STATEMENT OF THE CASE

The procedural history of this case involves a Complaint followed by two Amended Complaints and the granting of two motions to dismiss [Docs. 16, 27, 29, 45,  pages 141-198, Excerpts of Records].  The granting of the second motion to dismiss and the denial of Appellant's Motion for Partial Summary Judgment and the sua sponte granting of Summary Judgment for Appellees are at issue in this Appeal. [Doc. 27, pages 174-182 and Doc. 72, pages 4-30, Excerpts of Records].

## Factual Background

In 1993, Appellant purchased her home located at 102 South 130th Place, Chandler, Arizona. [Doc. 62, pages 92-123, Excerpts of Records]. In 2002, Appellant refinanced the property with Loan City and in 2003, Wells Fargo took over the servicing of loan. [Doc. 62, pages 92-123, Excerpts of Records]. In late 2009 Appellant fell into arrears on her mortgage and was actively trying to catch up payments to Appellee. [Doc. 62, pages 92-123, Excerpts of Records].

Appellee Wells Fargo notified Appellant that there were various remedies available to assist Appellant, including loan modification. [Doc. 62, pages 92-123, Excerpts of Records]. At the Bank's direction, Appellant began the process for obtaining a loan modification on February 2, 2010, signed the agreement and provided the requested documentation. [Doc. 62, pages 92-123, Excerpts of Record].   In the course of seeking the loan modifications, the Bank made repeated

commercial communications to Appellant. [Doc. 62, pages 92-123, Excerpts of Record]. Appellant continually contacted Appellee Wells Fargo to follow-up on the processing of her loan modification. [Doc. 62, pages 92-123, Excerpts of Record]. During the processing of the loan modification, when Wells Fargo requested information from Appellant she provided the information. [Doc. 62, pages 92-123, Excerpts of Record]. In fact, Appellant often was required to submit the same information numerous times. [Doc. 62, pages 92-123, Excerpts of Record]. After providing requested information, Appellant would usually call Wells Fargo to confirm receipt of the documents and that they were adequate. [Doc. 62, pages 92-123, Doc. 67, pages 45-64, Excerpts of Record] During these calls Appellant would inquire as to the status of the loan modification, and she was repeatedly informed that that based on her financial information she was still eligible for the loan modification, that everything looked in order, and that her loan modification was processing towards finalization. [Doc. 62, pages 92-123, Doc. 67, pages 45-64, Excerpts of Record] Appellant also believed from the conversations and directions given by Wells Fargo that her house would not be sold as long as [Doc. 62, pages 92-123, Doc. 67, pages 45-64, Excerpts of Record].

In fact, while Appellant's loan modification was pending, Appellant became very concerned in May 2010 when two men knocked on her door asking to come

in and inspect her home which was scheduled that day for a foreclosure sale and they intended to bid. [Doc. 62, page 114, Excerpts of Record]. This contact greatly upset Appellant because she had previously been informed by Wells Fargo that her home would not be sold if she was being considered for a loan modification and that Wells Fargo would continually postpone the foreclosure sale, which was "standard procedure." [Doc. 62, pages 92-123, Excerpts of Records]. Wells Fargo continually reset the sale date. [Doc. 62, pages 92-123, Excerpts of Records]. In June of 2010, Appellant received a letter requesting income documentation. [Doc. 67, pages 73-74, Excerpts of Records]. Although Appellant had already provided income documentation several times and Wells Fargo had confirmed that the documentation she submitted met their requirements, upon receipt of the June 5 letter Appellant called the Wells Fargo representative who sent the request, informing her that the information had already been submitted numerous times and that Amy Carite had confirmed that the documents had been received and accepted. [Doc. 62, pages 94-123, Excerpts of Records]. During that telephone call on June 10, 2010, Appellant was put through to the Supervisor, S. Jameson, who acknowledged that Wells Fargo had received the information submitted and informed Appellant she was not required to submit the tax/income documentation requested in their June 5, 2010 letter. [Doc. 62, pages 94-123, Excerpts of Records]. Based on this information provided by Wells Fargo, Appellant did not

Page: 5

submit any further documents and continued to wait for her loan modification to be finalized.[2] [Doc. 62, pages 94-123, Excerpts of Records]. On July 30, 2010 Wells Fargo sent Appellant a letter that they were "unable to adjust the terms of our mortgage through the Home Affordable Modification Program because you did not provide us with valid documentation as requested." [Doc. 67, pages 31-74, Excerpts of Records]. However, the letter did not specify what documentation was not provided. *Id.* Appellant had responded to every request for documentation, often submitting the same documents numerous times. [Doc. 62, pages 94-123 Excerpts of Records]. Appellant had also been in contact with Wells Fargo representatives and supervisors, who assured her that the documentation submitted was all acceptable [Doc. 62, pages 94-123, Excerpts of Records].

That same letter denying the modification also informed Appellant that she had "30 calendar days from the date of this notice to contact Wells Fargo to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you" and stated that "no foreclosure sale will be conducted and you will not lose your home during this 30 day period." [Doc. 67, pages 65-66, Excerpts of Records]. Despite the letter and assurance,

---

[2] Some of the calls that were made were never received in discovery and that issue was discussed in pleadings.

Appellant's home was sold prior to the 30 days. [Doc. 67, pages 71-72, Excerpts of Records].

In August, based on representation made by Wells Fargo Appellant believed that she still had a loan modification being processed through a different program, which she explained to the Wells Fargo representatives when she called.. [Doc. 67, pages 31-74, Excerpts of Records]. During this conversation after listening to Appellant, Wells Fargo representative Demetria told Appellant needed to "continue to review your account" and placed Appellant on hold. [Doc. 67, pages 31-74, Excerpts of Records].When she came back on the line, Demetria told Appellant "what I need to do is go ahead and update your information for you." [Doc. 67, pages 31-74, Excerpts of Records], which she proceeded to do and then informed Appellant that she prequalified for a loan modification but that she would have to resubmit the same documentation that Appellant had already submitted several times, leading Appellant to believe she was still being processed for a loan modification. [Doc. 67, pages 31-74, Excerpts of Records]. In response to Appellant's inquiry if this would stop the sale that Demetria had stated was set for the next week, Appellant's notes show that Demetria told her that if she faxed in all the documents by that Friday it will postpone the sale- the transcript notes inaudible but the Wells Fargo representative goes on to state "[N]ow and once they are able to get it postponed a lot of times actual postponement is not done until the

Page: 7

actual date of the sale.".[Doc. 67, pages 51-64, Excerpts of Records]. She then told Appellant that "a lot of times actual postponement is not done until the actual date of the sale"… "so it may be the last minute, the last hour in reference to the actual postponement."[Doc. 67, pages 51-64, Excerpts of Records]

As instructed by Wells Fargo, Appellant tried to fax in the documents later that same date but the fax would not go through to the number that had been provided, so the next day Appellant called back to get a correct fax number so that the documents would be received by Wells Fargo before the Friday deadline.[Doc. 67, pages 31-70, Excerpts of Records], Appellant was provided with another number for an escalated fax line, and after faxing the documents in that day she called again to confirm that they were received. [Doc. 67, pages 31-70, and Doc. 62, pages 113-123, Excerpts of Records] Finally, after numerous telephone calls, on August 21, 2015 Appellant called Wells Fargo and spoke with representative Jolanica, who was able to confirm that the documentation had all been received and that the request to postpone the sale set for the August 23, 2010 had been submitted. Jolanica also indicated she so noted Appellant's account. [Doc. 67, pages 31-70, and Doc. 62, pages 113-123, Excerpts of Records] Based on the written information received from Wells Fargo that they would help Appellant keep her home, her prior experience processing a loan modification through Wells Fargo, and the statements of numerous Wells Fargo representatives assuring

Appellant she would not lose her home, Appellant's belief that her house would not be sold at a foreclosure sale was more than reasonable. [Doc. 67, pages 31-70, and Doc. 62, pages 113-123, Excerpts of Records]. Despite the assurances that her home would not be sold, on August 23, 2010 Wells Fargo sold Appellant's home at a foreclosure sale and Appellant learned of the sale only when the new owner knocked on her door several days afterward to notify her that they were taking possession of the property.[Doc. 67, pages 51-70, and Doc. 62, pages 113-123, Excerpts of Records].

Appellant's filed a Complaint, in propria persona, which included, but was not limited to, claims for negligence, fraud, misrepresentation, negligent misrepresentation, breach of contract, and equitable estoppel; however the District Court entered an Order which dismissed the majority of Appellant's claims but permitted amendment. Appellant filed an Amended Complaint and many of the claims in that Complaint were also dismissed and are being appealed in this matter. [Doc. 27, pages 174-182, Excerpts of Record]. Underlying the entire action was discussion of a Consent Decree that established many violations by Wells Fargo, a fact that was basically ignored by the trial court based on standing. [Doc. 27, pages 174-182, Excerpts of Record].

Appellant filed a Second Amended Complaint [Doc. 29, pages 147-173, Excerpts of Record] and subsequently filed a Motion for Partial Summary

Judgment [Doc. 61, pages 124-141, Excerpts of Record]. Appellee Wells Fargo did not file their own motion for summary judgment, but filed a Response objecting to Appellant's Motion for Summary Judgment. [Doc. 66, pages 75-91, Excerpts of Record]. In their Response, Wells Fargo included a few final sentences which untimely asked the Court to find for summary judgment in their favor. [Doc.66, pages 75-91, Excerpts of Record].

The District Court entered an Order denying Appellant's Motion for Partial Summary Judgment and sua sponte, awarded summary judgment for all claims to Appellee Wells Fargo. [Doc. 72, pages 4-30, Excerpts of Record].

The court in essence acted as a fact finder and decided Appellant was not to be believed. [Doc. 72, Pages 4-30, Excerpts of Record].

## VI.    SUMMARY OF ARGUMENT

The trial court erred in its various findings dismissing several counts and then in denying partial summary judgment and granting summary judgment for the Appellee Wells Fargo. The trial court should have permitted the dismissed claims to move forward and not improperly acting as a fact finder when granting summary judgment for the Appellee Wells Fargo. The trial court also should not have acted sua sponte as it had not allowed Appellant to develop a record on the unilateral decisions that documentation was insufficient as a matter of law.

Page: 10

# VII.    ARGUMENT

## 1.    The Trial Court Erred in Dismissing the Counts from the First Amended Complaint.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the Appellee fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2). The requirements as to what is required, are clearly set out:

> … only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the court of appeals observed, be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pled facts do not permit the court to find more than a mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief."

> *Ashcroft, id* at 678. (citations omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. See *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)

First addressing the dismissal of Count 1 as to Appellee Tiffany & Bosco, in a recent case with nearly identical facts, the Arizona Court of Appeals held that a trustee is liable for its negligence in conducting foreclosures:

"To state a claim for increased risk of economic harm, [Appellant] was required to allege the following elements (1) Respondents undertook to render services to [Appellant] that they should have recognized were necessary to the protection of [Appellant's] property, (2) Respondents failure to exercise reasonable care while doing so increased the risk of harm to [Appellant], and (3) [Appellant] was in fact harmed because of Respondents' actions. See Restatement (Second) of Torts Section 323." *Steinberger v. Mc Vey,* No. 1 CA-SA 12-0087 (Ariz. Ct. App. Jan. 30, 2014) at p8.

Arizona has made clear that a trustee owes a duty of care to the owner of property. *Steinberger v. McVey,* No. 1 CA-SA 12-0087 (Ariz. Ct. App. Jan. 30, 2014):

> A deed of trust allows for a non-judicial foreclosure sale by creating rights and responsibilities in three individuals or entities: 'trustee,' 'trustor,' and 'beneficiary.' A.R.S. §§ 33-801(1), -801(10)(11); *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012). The borrower, or trustor, transfers legal title in the property to a trustee, while at the same time retaining possession of the property and enjoying the benefits of ownership. A.R.S. §§ 33-801(8), -801(10); *Eardley v. Greenberg*, 164 Ariz. 261, 264, 792 P.2d 724, 727 (1990); *Brant v. Hargrove,* 129 Ariz. 475, 480-81, 632 P.2d 978, 983-84 (App. 1981).
>
> Under a deed of trust, however, a trustee's title is limited: the trustee

essentially holds legal title for the sole purpose of selling the property if the trustor/borrower defaults on the note. A.R.S. § 33-807(A); *Eardley*, 164 Ariz. at 264, 792 P.2d at 727; *Brant,* 129 Ariz. at 480-81, 632 P.2d at 983-84.

A.R.S. §33-807. E. "The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust. Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter."

Contrary to Appellee's statement that "Appellant has not alleged a breach by T&B of duties imposed by the deed of trust," Appellant most certainly has alleged that Appellee Tiffany & Bosco were negligent in acting as the Trustee in not obtaining the information about the status of the loan after a letter advised Appellant that she could stop the foreclosure. They are therefore not entitled to an immediate dismissal just because they claim in a pleading they relied on the lender.

A.R.S. §33-820. Trustee's right to rely:

A. In carrying out his duties under the provisions of this chapter or any deed of trust, a trustee, shall when acting in good faith, have the absolute right to rely upon any written direction or information furnished to him by the beneficiary.

Although Appellee attempts to argue facts that are not appropriate for a motion to dismiss such as whether or not Appellant had notice, it misconstrues the negligence claim. Appellant's position is that Tiffany & Bosco cannot claim they acted in good faith and had a right to rely on direction by the beneficiary when

Page: 13

they did not communicate with the beneficiary about the pending loan modification. They had a duty to obtain direction and information under the statute. When they sent a letter to Appellant, they clearly stated that Appellant had the ability to stop the foreclosure by reinstating or paying the loan. The offer therefore placed Tiffany & Bosco on notice that a Appellant may actually read their letter and contact the lender instead of their office. By Tiffany & Bosco failing to find out from the lender if any arrangements to stop the foreclosure had occurred, they breached their duty to act in good faith.

Appellee Tiffany & Bosco had a duty to determine if the foreclosure now should go forward. Appellant is aware of no evidence that they did confirm with Appellee Wells Fargo that a loan modification was pending. Had they done so, the foreclosure would not have proceeded and Appellant would not have been damaged. They cannot stand behind an "acted in good faith" "relied in the lender" theory when they have failed to produce ANY evidence of what transpired. That evidence would be brought forth in discovery and was not sufficient to grant a Rule 12 motion. Appellant has a right to show through discovery that they acted negligently in not confirming directions after a prior continuance of the trustee sale and a letter telling Appellant she could reinstate.

As to Appellee Wells Fargo and the other counts dismissed, Appellant asserts the counts should not have been dismissed. As the Consent Judgment issue provides some background, it will be addressed first.

## Consent Judgment

The trial court found that the violations of the Consent Judgment were not actionable because Appellant was not a party to it. However, the trial court ignored that the evidence of the facts behind the Consent Judgment coming about would be relevant and admissible as evidence the allegations in the Amended Complaint. In not permitting the claim and refusing to consider the facts and agreements in the Consent Judgment, the trial court erred in allowing Appellant to develop her other counts with this information. Violations were relevant and admissible as clear evidence of other "unethical practices" and as evidence of industry standards applicable to Appellant's tort claims. As such, they must be considered fully for purposed of the pending motion to dismiss. *Dunlap v. Jimmy GMC of Tucson,* 136 Ariz. 338, 666 P.2d 83 (App 1983). The Consent Judgment provides the industry standard for loss mitigation services yet the trial court ignored those standards and never required the Appellee to develop the record when it granted the subsequent summary judgment sua sponte. In *Roswell v. Volkswagen of America*, 147 Ariz. 160, 709 P2d 160 (1985) the Arizona Supreme

Page: 15

Court considered a tort claim where an Appellee sought to avoid liability for injury resulting from departure from industry standards. The Court en banc instructs that:

> Therefore, in Arizona the rule in negligence cases shall continue to be that evidence of industry custom and practice is generally admissible as evidence relevant to whether Appellee's conduct was reasonable under the circumstances. In determining what is reasonable care or manufacturers the Appellant need only prove that Appellee's conduct presented a foreseeable, unreasonable risk of harm. As in all other negligence cases the jury is permitted to decide what is reasonable from the common experience of mankind.

In terms of the actual count, the trial court ignored the law relating to third party standing. When economic interests are presented, third party standing is usually granted in that the economic interests closely align. In *Singleton v. Wulff, 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976).*the court held that a physician had standing to assert the rights of patients in challenging a state statute limiting Medicaid covered abortions. The court has permitted an attorney to challenge statute limiting the ability to recover attorney's fees and black lung benefit cases on the grounds that the statute violated a client's right to legal representation. *U.S. Department of Labor v. Triplett*, 494 U.S. 715 (1990). In a line of cases that go back generations the court repeatedly held the right of economic victims to assert the rights of third parties. In *Craig v. Boren,* 429 U.S. 190 (1976), a decision allowing a seller of beer to assert rights of consumers, and in language fitting this case stated litigant "is entitled to assert those concomitant rights of third parties that would be 'diluted are adversely affected' "in the absence of third party

standing. Similarly the court has permitted booksellers to assert rights of book buyers, *Virginia v. American Booksellers* Association, 484 U.S. 383 (1988), and sellers of contraceptives to assert privacy rights of consumers. *Carey v. Population Services Intrntnl*, 431 U.S. 687(1977); *Eisenstadt v. Baird* 405 U.S. 438 (1972).

The case should be remanded to determine whether third party standing exists for enforcement of the Consent Judgment.

## BREACH OF DUTY OF GOOD FAITH

Appellant set forth her relationship with Appellant Wells Fargo and the loan modification agreement, yet the trial court found there was no contract, so no breach of good faith. Dismissing the claim with prejudice while acknowledging she could correct her pleading on the contract claim was clearly error. The trial court should have permitted her to amend when she amended the contract claim.

In Arizona, the duty of good faith and fair dealing requires only a contractual relationship, NOT a specific contract speaking to the misconduct in question. The controlling Arizona authority is *Wells Fargo Bank v. Arizona Laborers,* 38 P.3d 12, 201 Ariz. 474 (2002*).*which considered a similar situation as presented here. There parties had a contract relating to real estate loans, however, the dispute centered on the question of the failure of a party to warn another as to the suspected financial weakness of the third party. The contract did not require it,

Page: 17

or even address the issue. In language perfectly fitting this case, the Arizona Supreme Court *en banc* held that in light of the "justifiable expectations" of the injured party, the contract language was irrelevant.

## CONSUMER FRAUD ACT

A.R.S. §44-1522 et seq. forbids any act or practice with a "tendency and capacity" to convey misleading impressions," to be taken from all that is reasonably implied, not just from what was said"; with technical correctness irrelevant if the capacity to mislead is found. *Madsen v .Western American Mortgage Co.* 143 Ariz. 624, 694 P.2d 1228 (App. 1985); *Ward v. Fireman's Fund Insurance Cos* 152 Ariz. 211, 731 P.2d 106 (App. 1985). Appellant is required to ignore the direct teachings of all of the Arizona (and federal FTC) CFA cases that the violation is to be "taken from all that was reasonably implied, not just from what was said." All of the false, or misleading acts and practices are in violation of the CFA. As to the equally odd statement that Appellant has not alleged how or why these statements were "false," the Complaint sets that out in detail in the paragraphs identified above that the statements were "false" because they were not true. They were "misleading and deceptive" in that they met the test for "misleading and deceptive" a "tendency and capacity to convey misleading impressions; to be taken from all that was reasonably implied, not just what was

Page: 18

said"; with technical correctness irrelevant in light of the obvious capacity to mislead.

Reliance below on *Dunlap v. Jimmy GMC of Tucson Inc.* 136, Ariz. 338, 666 P. 2d 83 (App. 1983) is interesting. *Dunlap* instructs that an Appellees' history of "unethical" past acts is relevant and admissible both as to proof of the violation pled, but also as to punitive damages (at 343). The question before the Court on a motion to dismiss for failure to state a claim, is if the Complaint is specific and detailed to allow Appellees to frame an answer, and shows that a recovery is "plausible". As Appellees flagship authority provides, Appellees ample history of prosecutions, civil penalties, and related litigation is admissible, and must be considered in testing if "a recovery is plausible."

## CFA VIOLATION BY CONCEALMENT

The trial court simply and summarily dismissed with prejudice the Appellant's claims, despite the facts set forth in the Complaint as to the concealment. Appellee Wells Fargo touted their loss mitigation services in repeated commercial communications, always concealing and omitting the material fact that they had no intent to provide in good faith law-compliant services, have never provided them, had no intent, and judging by their present record with the Consent Judgment Monitor – still no present intent to conform to their promises.

The underlying failure of the trial court to recognize the problems that culminated in the Consent Judgment could establish fraud by concealment was error.

Services, including financial services, are subject to the CFA, as Appellee well knows.

"Appellants next contend that the trial court erred in holding that the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 through 1534, does not apply to the lending of money. Section 44-1522 forbids deceptive acts "in connection with the sale or advertisement of any merchandise." Put shortly, Transamerica's position is that the lending of money is not the sale or advertisement of merchandise. Given ordinary usage, that claim has plausibility. Because "merchandise," "sale," and "advertisement" all have special definitions in the statute, not comporting with ordinary usage, we hold that the lending of money is subject to the provisions of the Arizona Consumer Fraud Act." *Villegas v. Transamerica Financial Services*, 147 Ariz. 100, 102, 708 P.2d 781, 783 (App. 1985). See also *Frame v. CAL-WESTERN RECONVEYANCE CORPORATION*, Dist. Court, D. Arizona (2011).

This argument strains the duty of candor to the tribunal.

## A.R.S. TITLE 33 VIOLATIONS

The Complaint states "A.R.S. Title 33 Chapter 6.1 provides for specific requirements as to notice and procedure for loss mitigation and foreclosure which the Bank failed to obey as described above." The "context specific" review of the plausibility of Appellant recovering starts with the undisputed fact that NO notices required in by A.R.S. § 33-807.01 were ever sent.

A long line of Arizona cases require that "lenders must strictly comply with the Deed of Trust statutes, and the statutes and deed of trust must be strictly construed in favor of the borrower." *Patton v. First Federal Saving and Loan Assn.*, 118 Ariz. 473, 477, 578 P2d 152 (1978). The "Patton Rule" requiring strict compliance was extended in *Mid Kansas Fed. S&L v. Dynamic Development Corp.* 167 Ariz. 122, 804 P2d 1310 (1991). In *In re Krohn v. Sweetheart Properties,* 203 Ariz. 205, 52 P3d 774 (2002) the court required strict compliance with statutes and procedure as well as "substantive fairness" in the collection, loss mitigation, and foreclosure proceedings. The trial court ignored these requirements in summarily dismissing the count.

## FRAUDULENT CONCEALMENT

The trial court dismissed this claim under the theory that the allegation that Wells Fargo suppressed the fact it never kept advertised promises was insufficient. There were numerous other facts alleged about the conduct again harkening back to the Consent Judgment and related industry standards, articulated in the 2011 Consent Order and the 2012 Consent Judgment that set the standard for truthful and sufficient communication, which Appellees failed.

## NEGLIGENT FAILURE TO HIRE TRAIN OR SUPERVISE

The trial court dismissed the negligent hiring claim without any basis other than to cite to another district court case. It ignored *Kassman v. Busfield Enters., Inc.,* 131 Ariz. 163, 636 P2d 353 (App 1981) where Arizona adopted RESTATEMENT (SECOND) AGENCY Section 213. At all times, Wells Fargo had a duty to hire, train and supervise, which they failed, causing damage to Appellant. Appellant never had the opportunity to prove the allegation that Appellee violated industry standards which set standards for hiring, training and supervision. In addition, the trial court found no tort had been committed, again ignoring that wrongful foreclosure is a tort. There are conflicting cases as to whether Arizona recognizes it, but the cases clearly state it is a tort. Some courts have assumed such a tort exists under Arizona law. See *Schrock v. Fed. Nat'l Mortg. Ass'n,* No. CV 11-0567-PHX-JAT, 2011 U.S. Dist. LEXIS 85765, at *6 (D. Ariz. Aug. 3, 2011) (collecting cases). In addition, Appellant argued that negligence was committed by the employees so therefore there was a tort alleged.

## CONSTRUCTIVE FRAUD

The trial court dismissed this claim finding no fiduciary duty citing *McAlister v. Citibank* 171 Ariz. 207, 214–15, 829 P.2d 1253, 1260–61 (Ct. App. 1992). *McAlister* does not so hold, in fact it states that a relationship "akin to a fiduciary relationship, must exist." *Id.* at 215. A jury decides the disputed facts underlying the question of did Appellant and Appellee have such an "akin to a

fiduciary relationship".   In *Robertson v. Sixpence Inns of Am.,* 163 Ariz. 539, 789

P2d 1040(1990) the Arizona Supreme Court instructs that any disputed facts

relating to the duty must be decided by the jury, which is, of course, fatal to the

motion to dismiss.

> The relationship between the court and the jury in determining whether a
> duty to speak exist has been stated as follows:
>
> Whether there is a duty to the other to disclose the fact in question is
> always a matter for the determination of the court. If there are disputed
> facts bearing upon the existence of the duty, as for example the Appellees
> knowledge of the fact, the others ignorance of it or his opportunity to
> ascertain it, the customs of the particular trade, or the Appellees knowledge
> that the Appellant reasonably expects him to make the disclosure, they are
> to be determined by the jury under appropriate instructions as to the
> existence of the duty.

Restatement (Second) of Torts sec 551 Comment m (1977),   *Frazier v. Southwest*

*Sav. & Loan Ass'n*, 134 Ariz. 12, 653 P2d 362 (1982) at 18.

Application of the rule to this case is simple.  In *Stewart v. Phoenix Bank* 49

Ariz. 34, 64 P. 2d 101 (1934), the jury found that the transactions between the

Bank and the victim were sufficient to impose liability for constructive fraud.  If

the facts here are found by the jury to be that the relationship between Appellant

and Appellees, especially after the novation had been entered, were similar to those

found by the jury in *Stewart v. Phoenix Bank*  then constructive fraud liability

attaches.  However – for purposes of this motion to dismiss, only robust discovery

of the facts, then "determined by the jury under appropriate instructions…" will suffice.

## 2.     The Trial Court Erred in Denying Summary Judgment for Appellant.

A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir.2011).

Under Federal Rule of Civil Procedure 56, the moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 4*77 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It bears the burden of proving that there is an absence of evidence to support the non-moving party's case. *Id*. at 325, 106 S.Ct. 2548. Where the moving party meets that burden, the burden then shifts to the other party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some

"metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *In re Oracle Corp. Securities Litigation,* 627 F.3d 376 (9th Cir. 2010).

Appellant notes that normally a denial of summary judgment is not an appealable order. However, in this case, when the court granted, sua sponte, Wells Fargo summary judgment, the decision becomes final and is intertwined with that decision- the two issues must be considered together.

## NEGLIGENCE

Appellant has alleged that Wells Fargo was negligent when it informed her that the foreclosure was on hold, that they had all needed documents, sent a letter denying her modification and giving her thirty days to address the deficiencies or obtain other remedies, but then foreclosed anyway within the 30 days. Wells Fargo had a duty to give true and correct information to Appellant regarding her options, the status of the loan modification and the information as to the status of the Trustee Sale of Appellant's property. Wells Fargo was negligent in informing Appellant that the Trustee Sale would not take place and then still proceeding with the Trustee Sale and selling the property.

Wells Fargo had previously postponed the Trustee Sale and informed Appellant that the August 2010 sale date would also be postponed. Appellant was reasonable and acted in good faith when she relied on the information provided by Appellee that the Trustee Sale would not take place in August 2010 and she would not lose her home. Furthermore, Appellant continuously told Wells Fargo that if no program worked that she would reinstate the loan and that she did not want to lose her home. As a result of the Wells Fargo's negligence, Appellant sustained damages, suffered emotional distress and mental pain and suffering.

Negligent misrepresentation is defined as supplying "false information for the guidance of others in their business transactions" in the course of the tortfeasor's business, profession, employment, or any other transaction in which he has a pecuniary interest. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). Recovery is limited to the persons or limited group of persons "for whose benefit and guidance [the tortfeasor] intends to supply the information." Id. Liability is limited in scope "because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." Id. at 312-13, 742 P.2d at 813-14.

Section 552 of the Restatement (Second) of Torts reads as follows (emphasis added):

§ 552. Information Negligently Supplied for the Guidance of Others.

   (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

   (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

   (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

   (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

   (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

  Here, the Appellee has not produced any evidence to contradict Appellant's claims that the foreclosure would not take place as long as she was complying with their requests.  The Appellant has submitted uncontradicted evidence that she repeatedly sent them the documents requested.  She has shown she relied on the promises of Wells Fargo as the house was in fact foreclosed upon against her will and to her obvious surprise. Aside from the fact that she relied on the trial modification that she would not lose her home and relied on the oral and written statements made by Wells Fargo, she made it clear to Wells Fargo that she would

reinstate her loan in order to keep her home..  The letter from Wells Fargo specifically gave her time to do that or seek another option. Despite these promises, Wells Fargo foreclosed and Appellant was damaged.

**FRAUD**

Wells Fargo via telephone conversations and/or correspondence inducted Appellant to provide financial information, documentation, and submit lower interim payments in anticipation of obtaining a loan modification.  Wells Fargo represented to Appellant that they participate in federal loan modification programs as set forth above, as well as other loan modification programs that might be available to Appellant. In fact, Appellant entered into a trial loan modification agreement and complied with said agreement. When the letter was sent July 30, Wells  Fargo never notified Appellant in writing of any legitimate reason for the denial of her loan modification because she had in fact provided all documents. Wells Fargo's representatives on numerous occasions made statements and representations to Appellant indicating that she qualified for a loan modification. The July 30 letter also advised her no foreclosure would go forward for a period of 30 days.

Wells Fargo further informed Appellant on several occasions that the Trustee Sale would not proceed in August 2010. Wells Fargo acted in a fraudulent and

unlawful manner when making untrue statement and providing untrue information to Appellant. Appellant acted in good faith and was reasonable when she relied upon said statements and information given to her by Wells Fargo as being true and accurate. As a direct and proximate result of the Appellee's fraudulent acts and representations, Appellant sustained damages, suffered emotional distress and mental pain and suffering.

The elements for common law fraud are: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. *See, e.g., Nielson v. Flashberg,* 101 Ariz. 335, 338-39, 419 P.2d 514, 517-18 (1966) (internal quotations and citations omitted).

Here, Wells Fargo made several promises relating to the loan modification, that the foreclosure would not go forward during the modification review and then denied the modification for false reasons in that she supplied all required information. There is no evidence produced by the Appellee that supports the allegation she did not qualify for the permanent modification after she was offered the trial modification. The false reasons for the denial were therefore fraudulent.

In addition, the letter sent to her denying the modification and giving her until August 29 to address the "deficiencies" or find another way to avoid foreclosure, was specifically violated when Wells Fargo foreclosed on August 23. Her reliance on these promises resulted in her not reinstating the loan and therefore she was damaged by the loss of her home.

**MISREPRESENTATION**

Wells Fargo via numerous telephone conversations made representations to Appellant that she would qualify for a loan modification. Appellant complied with all the instructions provided by Wells Fargo and submitted all requested information and made the lower interim payments in a reasonable and timely manner, and all Appellant's information, documentation, and payments were received, accepted and processed by Wells Fargo. Appellee informed Appellant that the Trustee Sale was postponed and would not take place in August 2010. They further advised her via a letter that they would not foreclose until after August 29th. Wells Fargo misrepresented the facts when it told Appellant she qualified for the trial modification and just needed to provide the documentation. Wells Fargo's representations/misrepresentations to Appellant were material, and were made in an intentional, reckless and negligent manner. Wells Fargo knew or should have known that Appellant relied on the representations/misrepresentations

Page: 30

as she repeatedly told them that she wanted and intended to keep her home and, if necessary, would reinstate to avoid foreclosure.

Arizona recognizes the tort of negligent misrepresentation as set out in the Restatement (Second) of Torts. *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992) held that negligent misrepresentation is defined as supplying "false information for the guidance of others in their business transactions" in the course of the tortfeasor's business, profession, employment, or any other transaction in which he has a pecuniary interest. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). Recovery is limited to the persons or limited group of persons "for whose benefit and guidance [the tortfeasor] intends to supply the information." Id. Liability is limited in scope "because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." Id. at 312-13, 742 P.2d at 813-14.

Wells Fargo has failed to produce any evidence that it did not make material representations to Appellant that were false and that she relied on nor did it produce any evidence that she was not damaged.

**BREACH OF CONTRACT**

On February 2, 2010, Appellant signed and accepted an offer by Wells Fargo Bank for a Home Affordable Modification Loan Trial Period. The first paragraph provided that if Appellant was in compliance with the trial period that the lender would provide a loan modification that would amend and supplement her note secured by the mortgage. The Modification Loan Trial Period agreement stated that any foreclosure action would be suspended if she continued to meet her obligations under the Plan. Appellant made all of the payments and otherwise complied with the contract.

Over the next few months, Wells Fargo sought additional documents to finalize a permanent modification, requesting the same documents numerous times, despite the agreement that the loan modification would be permanent if Appellant complied with the trial period plan. Appellant provided all requested documents and complied with the terms of the Loan Trial Period agreement. Appellant was also told that she would be given an opportunity to cure the deficiency if the modification was not complied with, an additional oral offer which she accepted when she advised Wells Fargo that it was her intent to do so.

It is well settled law in the Ninth Circuit that the Bank is without question liable for breach of contract in refusing to provide a permanent loan modification after Appellant has fully performed during a HAMP trial period plan *Corvello v. Wells Fargo Bank, NA,* 728 F.3d 878 (9th Cir. 2013). In exactly the same scenario

as presented here, Appellants had fully performed after a HAMP trial period plan, and Wells Fargo had refused to provide the promised permanent loan modification; the Ninth Circuit reversed both trial courts, and held Wells Fargo liable for breach of contract. See also *Wigod v. Wells Fargo Bank N.A.,* 673 F3d 547 (7th Cir 2012).

Appellant was damaged when Wells Fargo foreclosed on her home in violation of the agreement and without the opportunity to cure the alleged default. Under Arizona law, a breach of contract claim contains three elements: "an agreement, the right to seek relief, and breach by a Appellee." *Narramore v. HSBC Bank USA, N.A.,* No. 09-CV-635-TUC-CKJ, 2010 WL 2732815 at *4 (D. Ariz. July 7, 2010). Here, the trial modification was a contract and the failure to extend a permanent loan modification was a breach as well as the promises made that no foreclosure would occur during the process. Wells Fargo has presented no contradictory evidence to show it did not breach the contract nor did it present any evidence that Appellant did not comply with the modification provisions. Simply producing "letters" that you are missing documentation in the face of evidence showing the documents were produced numerous times does not satisfy the burden to rebut what Appellant has clearly established.

**ESTOPPEL**

At the time of the misrepresentations and concealment of material facts described above, the true facts were known to Wells Fargo the true facts were not known to Appellant, and the Bank intended that Appellant act on the false or concealed facts. Wells Fargo made promises and should have foreseen that Appellant would and in fact did, rely and act upon these false facts to her detriment. Her reliance on the promises made resulted in her losing her home to foreclosure which resulted in numerous damages.

Arizona defines equitable estoppel as "an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany Inc. v. W. M. K. Transit Mix, Inc*., 16 Ariz. App. 415, 419, 493 P.2d 1220, 1224 (1972). In Arizona, equitable estoppel "is available only as a defense, while promissory estoppel can be used as a cause of action for damages." Id. Arizona courts have allowed claims based on equitable estoppel to continue as promissory estoppel claims if the Appellant, as has been done here, adequately alleged the elements of promissory estoppel. *Gorman v. Pima Cnty.*, 230 Ariz. 506, 287 P.3d 800, 804 n.4 (Ct. App. 2012). "The critical distinction between the two is that equitable estoppel refers to reliance on a misrepresentation of some present or past fact, whereas `promissory estoppel rests upon a promise to do something in the future.'" Id. (quoting *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970)). Otherwise, "promissory estoppel includes all elements of equitable estoppel." *Id.*

Page: 34

In *State ex rel. Romley v. Gaines*, 67 P.3d 734, 205 Ariz. 138 (Ct. App. 2003), must show that they actually relied on that promise to their detriment and that Arizona follows the Restatement (Second) of Contracts § 90 (1981) "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Appellant has produced more than enough evidence to succeed under Rule 56. The documents produced by the Appellee do not contradict that evidence such that once Appellant has succeeded in her burden, and Wells Fargo has not produced contradictory evidence to rebut it. Appellant is entitled to summary judgment and respectfully requests that this Court enter judgment against Wells Fargo on the issue of liability and allow her to proceed to establish damages. If summary judgment was not appropriate for Appellant and the trial court found factual disputes, it should never have granted summary judgment for Appellee.

**3.     The Trial Court Erred in Sua Sponte granting Summary Judgment for the Appellee.**

What is clear is that Appellee Wells Fargo did not file a Motion for Summary Judgment- if it had believed the evidence supported such a Motion, it would have done so. The failure to file a dispositive motion shows even Appellee

knew it was futile. Yet the District Court acted as a fact finder, a decision that was an error.

As stated above, the evidence set forth at a minimum a factual issue as to whether Wells Fargo violated the agreement by foreclosing on the home. Appellant testified clearly that she was given the offer of the modification, that she complied with it and she did everything asked of her. The evidence supported that conclusion. However, the gist of the trial court's ruling was that it decided that Wells Fargo's requests for compliance overruled the Appellant's testimony that she had provide everything requested. The court accepted the conclusory statements from the bank without any evidence that it was needed, that Appellant's assurances were not correct and that somehow legally a party can unilaterally breach a contract and be excused from performance without a fact finder ever determining if the facts supported a breach by Appellant.

"In *Corvello*, the borrowers complied with the trial period plan; here, Appellant did not." [Doc. 100   pages   Excerpts of Record]. This type of finding is for a trier of fact and not a court given the numerous documents provided showing ongoing compliance with the repeated demands for the same paperwork. When summary judgment is granted sua sponte, the case is generally remanded for further factual development except in certain circumstances *Nozzi v. Housing Authority of City of Los Angeles,* No. 13-56223 (9th Cir. Nov. 30, 2015)."We have

long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court [of appeal] may enter summary judgment sua sponte for the nonmoving party." *Albino v. Baca,* 747 F.3d 1162, 1176 (9th Cir. 2014) (en banc); see also *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a `full and fair opportunity to ventilate the issues involved in the matter.'" (quoting *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir. 1982)).

If the moving party has "be[en] given reasonable notice that the sufficiency of his or her claim will be in issue," *Buckingham v. United States,* 998 F.2d 735, 742 (9th Cir. 1993), and has therefore had "adequate time to develop the facts on which the litigant [would] depend to oppose summary judgment," *Portsmouth Square v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir. 1985), sua sponte summary judgment is appropriate.

In this case, Appellant moved for partial summary judgment as to the actions of Wells Fargo. The sua sponte grant of summary judgment did not include a full development of the facts as it related to the counts at remaining at issue in the Second Amended Complaint. In its Order, the District Court found that Appellant did not comply with the requirements of the trial period plan and that they had

properly denied the modification. This finding was contrary to the some of the evidence and could only be found if the trial court chose to disbelieve Appellant, the job of a fact finder. "The loan was denied because Appellant failed to comply with the requirements." [Doc. 100, pages Excerpts of Record] The trial court thus stepped into the shoes of the fact finder to determine that Appellant providing all of the documentation to support her income was not in "compliance" simply because one party said so. This Order ignores well established law that a fact finder must decide issues in dispute. The issue is not a legal one- it is whether Wells Fargo can unilaterally determine its interpretation of the contract and thus the trial court failed to develop a record as to whether that documentation was sufficient under the contract such that it made a finding that Appellant breached the contract, not Wells Fargo.

Appellant could not anticipate that the trial court would sua sponte decide make a decision that the documentation provided by Appellant, despite the assurances of the people she spoke with, constituted failure to comply as a matter of law. No evidence was taken or presented showing that the information she gave was not sufficient under the HAMP program as the cites by the Court left things up to the discretion of the bank in terms of sufficiency thus worst case, creating an issue for the jury. Had Appellant known that the trial court was considering that as definitive as opposed to denying Appellant summary judgment, she would have

Page: 38

produced evidence that showed that the documents were sufficient. Another example of the trial court failing to develop a sufficient record was the finding that "Appellant never clearly explains why she is entitled to a loan modification when she repeatedly refused to work with Defendants to verify her income." That finding was completely contradicted by evidence acknowledged by the trial court that was faxed to Wells Fargo repeatedly including an affidavit and pay stubs.

**Conclusion**

Based on the foregoing, it is respectfully requested that the Court reverse the judgment of dismissal with prejudice and reinstate the counts dismissed and reverse the grant of summary judgment for the Appellees and the denial of the motion for partial summary judgment.

## IX. STATEMENT OF RELATED CASES

There are no cases currently pending before the United States Court of Appeals for the Ninth Circuit that are deemed to be related to the instant case.

Respectfully submitted this 3rd day of February, 2016.

*/s/ David R.Vandeventer*
David R. Vandeventer
State Bar # 30321
7272 East Indian School Suite 111
Scottsdale, AZ 85251
drv@tmrc.org
Attorney for Appellant

# X. CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, undersigned counsel certifies that the text in this brief:

- is proportionately spaced,

- has a typeface of 14 points of more, and

- contains 10,360 words.

*/s/ David R.Vandeventer*
David R. Vandeventer
State Bar # 30321
7272 East Indian School Suite 111
Scottsdale, AZ 85251
drv@tmrc.org
Attorney for Appellant

## XI.    CERTIFICATE OF FILING AND SERVICE

Pursuant to Fed. R. App. 25(d)(1)-(3) & 31(b) and Ninth Circuit Rule 13-1, undersigned counsel certifies that on February 3, 2016 counsel caused the foregoing brief to be filed electronically through the United States Court of Appeals Electronic Case Filing ("ECF") System. An electronic copy and two hard copies, along with one copy of the Appellant's Excerpts of Record were also provided to:

Leonard J McDonald, Jr
David Winthrop Cowles

Robert Isaac Schwimmer
Barbara J Dawson
Snell & Wilmer, LLP
One Arizona Center
400 East Van Buren
Phoenix, AZ 85004
Attorneys for Appellee

*/s/ David R.Vandeventer*
David R. Vandeventer
State Bar # 30321
7272 East Indian School Suite 111
Scottsdale, AZ 85251
drv@tmrc.org
Attorney for Appellant

Page: 41